IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERI R. HENRY *and*, VIRGIL G. HENRY
*for M.H.,*

                     Plaintiffs,

                        v.

DR. LINDA LANE *Superintendent of Pgh.*
*Public Schools*, ET AL.,

                     Defendants.

16cv1239

ELECTRONICALLY FILED

**<u>Memorandum Opinion on Motion to Dismiss (doc. 16)</u>**

I.      **Introduction**

      This is a civil rights action brought by Plaintiffs, Teri and Virgil Henry, as parents of

M.H., against numerous Defendants in connection with what appears to be an appeal of a May

16, 2016 final order and decision of a special education hearing officer who is employed by the

Pennsylvania Office for Dispute Resolution.  However, in the extensive narrative of Plaintiffs'

*pro se* complaint, they reference claims relating to M.H.'s current Individualized Education

Program (IEP).

      Pending before this Court is a Motion to Dismiss brought pursuant to Fed. R. Civ. Pr.

12(b)(1), (4), (5) and (6), a Motion for More Definite Statement pursuant to Fed. R. Civ. P 12(e),

and a Motion to Strike Minor from Caption and Case filed by Defendants Pittsburgh Public

School District, Denise (unknown last name), Mary-Lou (unknown last name), Amy Berner,

Tracy Brezicki, Paulette Colonna, Mary-Jane Conley, Sylbia Kunst, Cicily Kurian, Dr. Linda

Lane, David May-Stein, Tom Spickler, Donna Westbrooks-Martin, Kimberly Zangrilli, and

Aimee Zundel, collectively referred to as the "School District Defendants," (doc. 16).  Plaintiffs

response thereto was due on March 10, 2017, and as of this date, no response has been filed.[1]
Although the Court could dismiss this case for failure to prosecute, the Court will instead
consider the pending Motions on their merits.

## II.     Standards of Review

### A. Rule 12(b)(1)

A Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges this Court's "very
power to hear the case." *See Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759
(W.D. Pa. 2007) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.
1977)).  As the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims
are properly before the district court." *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d
156, 158 (3d Cir. 1995).  In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court
must distinguish between facial attacks and factual attacks. *See Petruska v. Gannon Univ.*, 462
F.3d 294, 302 (3d Cir. 2006).

A facial attack challenges the sufficiency of the pleadings, and the Court must accept the
Plaintiff's allegations as true. *Id.*  A Defendant who attacks a complaint on its face "[asserts] that
considering the allegations of the complaint as true, and drawing all reasonable inferences in
favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of
action." *Mullen v. Thompson*, 155 F. Supp. 2d 448, 451 (W.D. Pa. 2001).  Dismissal is proper
under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for
the purpose of obtaining jurisdiction or. . . is wholly insubstantial and frivolous." *Kehr*

---

[1] The Court notes that several other Defendants have waived service and their answer due date is
set for April 3, 2017.

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

When, as in this case, a Defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 (quoting *Mortenson*, 549 F.2d at 891). In a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

### B. Fed. R. Civ. Pr. 12(b)(4) and 12(b)(5)

Insufficient process is the inadequacy of the actual document served on Defendant. *Salaam v. Merlin*, 2009 WL 2230925 at *2 (D.N.J. July 22, 2009) (Simandle, J) (citing 5B Wright & Miller, Federal Practice & Procedure (2004) § 1353 at 334). "The United States Court of Appeals for the Third Circuit has held that 'dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.'" *Deppenbrook v. Pension Ben. Guar. Corp.*, 2011 WL 1045765 at *2 (W.D. Pa. Mar. 17, 2011) (Cercone, J.) (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir.1992)).

A plaintiff is required to effectuate service upon all defendants. Fed.R.Civ.P. 4. When a Defendant files a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(5) for failure to effectuate service, "in resolving a motion under Rule 12(b)(5), 'the party making the service has the burden of demonstrating its validity when an objection to service is made.'" *Reed v. Weeks Marine, Inc.,* 166 F.Supp.2d 1052, 1054 (E.D. Pa. 2001) (citing *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488-89 (3d Cir.1993)).

**C. Fed. R. Civ. Pr. 12(b)(6)**

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon which relief can be granted." Detailed factual pleading is not required – Rule 8(a)(2) calls for a "short and plain statement of the claim showing that the pleader is entitled to relief" – but a Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the Court should

assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**III.     Discussion**

**A.  Rule 12(b)(1)**

The School District Defendants first argue that because the instant lawsuit appears to be an appeal of a May 16, 2016 Final Order and Decision of the special education hearing officer Defendant Skidmore, and because the Complaint also raises education claims against the School District which arose after the May 16, 2016 Order, this Court lacks subject matter jurisdiction to hear these claims.

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., requires states educational agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies."  20 U.S.C. § 1415(a). Parents and eligible children have the right to request an impartial due process hearing on any matter relating to the indemnification, evaluation or educational placement of the child, or the provision of FAPE to such a child.  Id. at § 1415(b)(6) and (f)(1).  Either the parent or the aggrieved child pay appeal the decision of an administrative hearing office to the appropriate court of competent jurisdiction.  Id. at § 1415(i)(2).

Exhaustion of administrative remedies is a strong policy consideration in the IDEA. *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). The exhaustion of administrative remedies also extends to violations claimed under Section 504 and the Americans with Disabilities Act insofar as they relate to the provision of FAPE to the child.  *See Batchelor v. Rose Tree Media Sct. Dist*, 759 F.3d 266, 272-73 ((3d Cir. 2014).

The  United States Court of Appeals for the Third Circuit has recognized exceptions to the IDEA's exhaustion requirement including where: "(1) it 'would be futile or inadequate'; (2)

the 'issue presented is purely a legal question'; (3) 'the administrative agency cannot grant relief (e.g., hearing officer lacks authority to provide a remedy)'; or (4) 'exhaustion would work severe or irreparable harm upon a litigant.'" *A.C. v. Scranton School District*, 191 F.Supp. 3d 375, 394 (M.D. Pa. June 13, 2016) (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)). The IDEA exhaustion requirement is jurisdictional. *Id.* (citation omitted); *Blunt v. Lower Merion School Dist.*, 559 F.Supp.2d 548 (E.D.Pa.2008) (dismissing unexhausted claims for lack of jurisdiction under Rule 12(b)(1)).

Because there is no allegation that Plaintiffs have exhausted their administrative remedies as to their claims arising after May 16, 2016, and Plaintiffs have failed to meet their burden of persuasion that these claims are properly before this Court, subject matter jurisdiction as to these claims is lacking. *Kehr Packages, Inc., v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991).

### B. Rule 12(b)(4) and (5)

The School District Defendants next raise the issue of improper service of process. The procedural history of this case reveals that Plaintiffs failed to attempt to serve School District of Pittsburgh until well beyond the 90 day window to make service of process under the Fed. R. Civ. P. 4(m). The Court extended the time for service of process, and Defendants contend that Plaintiffs ultimately did so in a "haphazard and ineffective manner, inconsistent with the Federal Rules of Civil Procedure." According to Defendants, the School District of Pittsburgh and several individually named Defendants have not been served. While Plaintiffs have requested that Defendants waive service as set forth in Fed. R. Civ. P. 4(d)(1), Plaintiffs have failed to send their request for waiver of service through first-class mail or other reliable means." Because service was improper, the Court could properly dismiss the claims on this basis against the School District Defendants.

**C.  Rule 12(b)(6)**

Finally, the School District Defendants assert that Plaintiffs' complaint fails to state a

claim upon which relief may be granted as to the individually named School District Defendants,

and upon the School District of Pittsburgh.  First, as to the individual School District Defendants,

Plaintiffs have named 13 individuals who are either current or former employees of the School

District.  Plaintiffs also name the School District's attorney, who served as counsel for the

School District in the underlying special education due process hearing.  Two additional named

Defendants are not, nor have they even been, employees or contractors of the School District.

The commonality here is that all of the named School District Defendants have played some role

in the education of the minor, M.H., during the course of their employment with the School

District.

Where, as here, claims against individual Defendant would be duplicative of claims

against a governmental entity, the claims against the individuals must give way to the

governmental entity since it is the real party in interest.[2]  *Blunt v. Lower Merion School. Dist.,*

559 F.Supp.548, 568 (E.D. Pa. 2008).

Plaintiffs' complaint is 40 pages long, single-spaced, and as the School District

Defendants aptly describe, it is written in a run on prose format.  Turning to the claims against

the School District Defendants, rather than attempt to summarize the requested relief, the Court

will quote from pages 35-40 of the Complaint in this matter:

> We are requesting, The Honorable Administrative Judge, of Federal
> Court, to 1st reconsider all of the facts, regarding evidence, exhibits, and
> testimonies, which we, the parents as (Pro Se') litigant's provided at Due
> Process, which was requested by The District's Attorney & The Hearing

---

[2] Plaintiffs have not plead any allegations that would equate to a claim of individual or personal
liability; instead, these claims appear to be only seeking relief against these Defendants acting in
their official capacity.

Officer an "Offer of Proof" and other admissible and pertinent Evidence of Documentation, which has been, with partiality and highly questionable, as to why they weren't considered, in regards to the outcome and decision-making of The Hearing Officer's Ruling? While providing consistent facts, Documentation, along with Dictation Reports, and Letterheads, from a Superintendent and Assistant, also including and providing statements of awareness, by Highly respected Physicians, who one was willing to testify in person at the Proceedings, but due to very short notice, and with regards to heavy and imperative matters and other obligations, couldn't attend. With concern of the issues, l had confidential communication's, which were shared with, over the years. The written exhibits & testimony are all in sync with my husband and I, testifying to the severe deprivation and Violations of an Equal Educational Opportunity & (FAPE) causing our daughter, several years loss of education benefits, who's a qualified individual, eligible to participate in a multiple- disabilities Program, in an appropriate education environment (lRE).We're also requesting to Please observe the many errors & discrepancies, made by The Defendant(s) which have never been corrected, upon several occasions of request.  It is critical that M.C.'s (IEP) is very clear, detailed and updated as the yearly Requirements, are expected aw, and for (IEP) goals to be appropriately implemented & met, in accordance with Regulation's/Guidelines.

Compliance to State/Federal Special Education Rules, Regulation's & Requirements, for providing  All children with disabilities, are very imperative to follow, and not just hand out several Documents of The Procedural Safeguard Notice, and continue to stay in Violation of what the document is intended for, to have Protections in place for disabled children and their parents, and to deter Discrimination and other unacceptable Misconduct of any sort, School Administration & personnel, should be very conscious of modeling high standards of Integrity, legally & Morally, as a positive example to children, who due to their disability & not by choice, have challenges with their own behavior's, without the need to learn unlawful & inappropriate behavior's from those responsible for supervising them.

We are 1st and foremost also Requesting, that The Honorable Judge, permit us to enforce our daughters Rights. We Request that The District/School's be Ordered to Comply to All Special Education Rules, Guidelines and Regulations of Laws, that I spoke in regards to above. We would like M.C. to receive adequate and sufficient supports, and accommodation's, to enable her to attend the education environment with her classmates. We would like the team of staff to be closely monitored, to ensure the lack of unprepared or under qualified person(s) may receive some sort of workshop or Orientation, to ensure & allow them to be better acquainted, in

regards to new experiences, which some may have never engaged with hands on experience. We request that clear, detailed instruction, for any nurse/personal care assistant, and we the parents and All Paraprofessionals/Therapists etc. also receive, exactly what or what not we are permitted to do (Ex.) Can't enter the home, if they request help and need training, or demonstration for effective assistance. (Ex.) The District & most recent School, knew we had a small porch with steps, The nurse would help me, if my husband was unavailable, due to working by taking M.C. 1st out of the wheelchair, for the weight of her, in the wheelchair, would've been too difficult & unsafe lifting up or down porch steps. Than very carefully, I would take half of her body, & the nurse would assist with the other half of her body to safely lift her into the house. We request The District/School's be reasonable in certain things, such as the caretaker, still needs to be, at least briefed, even the most experienced personnel, for which overall, allows everyone who's interacting with M.C., a better idea of, if she's having a more difficult day, how to approach her, more effectively, and to be reasonable, with how confidential medical information is communicated. At times, need to stay confidential, around those who aren't interacting with her, in regards to her medical/behavioral care. Also whatever bus/van companies that The District contracts with, we would like The Judge to Order The District & Owner/Manager of School transportation to ensure all drivers receive Safety workshops every so often, even senior drivers to freshen up on safety skills, especially when handling wheelchairs, to provide utmost security, that the child and wheelchair don't fall off the lift, while inches in the air off the ground. Sometimes accidents happen, however driver she never leave child unattended, by walking away from the lift, unless notifying a responsible adult, such as nurse or parent. To debate with the parent, while being wrong is unreasonable & unacceptable. At the least, drivers should have courtesy skills & just apologize, especially attitude is major when interacting with children & families with challenges, to keep their children with disabilities as secure as possible.

　　　　We also Request, that the Court Order The District/Schools to permit fair participation in every activity, that M.C.'s able to participate in activities, without unfair & unreasonable exclusion, for reasons that aren't in accordance to Special Educational Laws. For Compliance to Civil Laws, aren't supposed to be Optional. The only exception, for nonparticipation, should be  we the parents request otherwise, Or  staff with an understandable reason, as, some days, she may be ill, or become ill during school and actually not be healthy or suitable for participation of some activities. (Ex.) developing a contagious virus, runny stools/fever. We would also like to request that during higher

intensity, self-injurious behavior's,  be treated as a high priority to foreseeable harm, with staff using in  moderation, good safety judgements [sic],such as, if M.C. is  with a 1:1 nurse/assistant or employee, while engaging in more aggressive behavior's, when extremely necessary, permit 1:1 to apply either arm/elbow immobilizers, or helmet, for safety purposes, to prevent harm to self or other individuals, who maybe in close contact, while transporting to & from home & school, while riding in school vehicle. It would also, while vehicle is in motion, help keep the driver less distracted, while focusing on the road. Whoever is assisting M.C., sometimes, depending on what may be causing behavior's, such as being frustrated and not having a way to communicate verbally, and may not be feeling well. If attempting to always 1st use certain behavioral techniques, to redirect or replace negative behavior's, which, at times, may not be so effective, during higher intensity episodes, then it would be reasonable for individual staff, which don't have access to another person to help with or is overwhelmed to then use available arm/elbow immobilizers, until behavior decreases, to avoid *any* physical harm. These protective aids, should only be used for protection and not as just a restraint. A brief daily log to keep good & open communications of how her day was at school, including communicating more severe incidents, that may  occur, as a way for us parents to determine, the possibility of needing to visit the hospital, to make sure nothing medical & severe is happening, or if she's just behaving, according to what's fairly normal for her, as her expected baseline.

We are also requesting that M.C. receives Compensatory Education, due to the years, which were unrightfully taken from her. I'm not sure how this can be worked out, for she is currently (10) and a half years old, and the average graduation age is approx. (21) years of age, for Special Education Students Due to the nature & severity of School's/District unreasonable & Outrageous Conduct, and intentions not done in good faith, to appropriately rectify, problem solve, imperative discrepancies, in regards to the well-being of the children, by responding to a child endangering herself, to where bloodshed was substantial, reasonable people would've intervened, especially when there are several available, observing what she's doing, and could've prevented less of an impact/ bloodshed, by stopping her. To have malicious intentions toward to a (5) year old non-verbal child, disabled and unable to stand up f herself, is very startling & disturbing, for me to actually, witness what I would describe as anti-social & lack of emotion to a child who's hurting self, due to nature of disability, by and showed no visual or verbal remorse, for intentionally neglecting their duties to supervise. It should be staff's 1st Priority obligation to prevent foreseeable harm, with good intentions and genuine efforts, to the best of what possible, as a team's ability. Because of the intrntion's [sic] of

throughout her brief encounter with School, due to things which could've been corrected, for the sake of the importance of M.C.'s Special Instruction, We're Requesting The Judge/Court to reprimand, those the Judge believes are most responsible, for failing to provide (FAPE) not once but twice, after we extensively, trying to satisfactory [sic] participate in Mediation, and through much communication with The District, to come to a reasonable meeting spot, with decisions regarding    M.C.'s strongest needs, academically, socially ,functionally, To adequately assist in gaining skills and knowledge, in order for M.C. to become more independent to deter continuous Misconduct, not in accordance with State/ Federal Requirements, Which are established for Complying to. If The Judge decides, we are Requesting that in Order to create less undesirable treatment, for the future, such as depriving & exclusions to entitlement, of an Equal Educational Opportunity & (FAPE) and participation in school activities, the Law & Government Requires for individual's like M.C. with Special needs. An effective means of punishment, to aid in encouraging incentive, to want to do right, and develop ways in treating human-beings, less fortunate with Dignity & Respect, We don't believe Ordering those, for conspiracy & intentional wrongdoing, would be unreasonable to hold the Defendant(s) accountable for monetary Compensation as well. Principles and implementing what's right, is the main purpose of this request. Their Frivolous action's & Conduct has been so reprehensible & Outrageous, in comparison to most Due Process Cases, that for added emotional damages, causing her to lose several years of opportunity, which would've helped her to speak verbally, or sign, etc. And caused a severe loss in repetitious opportunities to learn how to gain academic & behavioral coping skills support, provided by Special Ed.Teachers & Professional Behavioral Specialists. M.C. has lost confidence, and has been much more withdrawn with her family at home. M.C. for most of her life, normally enjoys being held and hugged by siblings, normally always seeking attention, accompanied with a big & hearty smile. Not so much lately. Her being stuck in the house, with not much to look forward to, by attending school, has dramatically affected her emotionally, functionally, psychologically, etc.

Even compensation, can never replace, what she have already lost, through, the importance of education for all. Nothing is more frustrating, than watching your child, not receive Dignity & Respect, she deserves, as any human-being and not just because she was born into the world differently, shouldn't be negatively distinguished from, going through so much unnecessary grief and red tape to an innocent child, is not worth any amount of money. I would've given anything, that she had been provided with adequate support in assisting her in meeting just basic goals, while participating in

school, which many are Privileged to have the opportunity in America . I honestly will say, that being provided a (FAPE) 1st and most importantly, along with monetary compensation, would help give some relief and would also help with things, to help M.C. to have a home remodeled and certain accommodation's to assist with mobility, in/out & around the home, to be wheelchair accessible, which also will help her to become more independent as well. Allowing her more freedom(s) in her own unique way, within the community. I believe this Request to be fair & reasonable, considering the circumstances, which repressed us, of all our attempts to have her placed in school, however, never was guided in the right direction. Withholding important Documents such as The (NOREP)PWN blocked our efforts, misleading us to think, all would be taken care of, with the original Placement agreed by The (IEP) Team which originated in 2011. Meanwhile time has been manipulated, in an attempt to continue to suggest, just, Pioneer, which we don't know, what actions have or would take place, while dealing with a group of staff, having such Ridiculous Conduct. As the last resort, seeing & trying to continuously explain the need for something seriously needing to be done, and in approaching the appropriate order of chain of command, attempting to resolve issues amongst the team, to prevent many other children & families that may be experiencing similar issues with District's & Schools Non-Compliance to State/Federal Rules & Regulations, and exclusions to a right to attend a (LRE) in a school setting. We are requesting, The Judge/Court to Consider a reasonable and fair amount for (5) and a half years, of this ongoing series of several continued issues and unlawful violations, adding to M.C.'s mental/emotional distress, loss of motivation and confidence, along with adding to and creating possibly, reparable damages. As she's became older, chances of her catching on, to so many lost opportunities, ill become more difficult for her than many of her peers, due to being unrightfully isolated to social interactions etc. We're hopeful, M.C. will be provided, an opportunity for a consistent attendance, for possibly her future & next Educational experience. We think a reasonable amount in monetary compensation would be $100,000 per. (5) years = $500,000. If the Judge/Court grants this Request of relief. We realize the Judge/Court has the final decision. We're also Respectful of The Judges consideration, to consequences for wrongdoing are appropriate. For these matters affect the quality of life of our daughter. We hope this particular request of relief, is going to deter Misconduct to exclude children & adults with Special Needs, unrightfully deprived from Equal Educational Opportunities, which an extremely imperative experience in life, participating to the best of their God-given ability. Using & implementing the knowledge & coping skills, learned from Professional Educator's, to get the most productive

goals & achievements in life. I would in advance, like to thank the Judge/Court for the opportunity to consider this Appeal Request, in helping to make positive changes for Individuals with Special Needs.

Doc. No. 4 at 35-40.

The Court explained in *A.C. v. Scranton School District*, 191 F. Supp. 3d 375

(M.D. Pa. June 13, 2016), the standards of proof in the context of a claim under the

IDEA, Section 504 of the RA, and the ADA, which bears repeating:

> To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir.2000). Flexibility to implement an IEP is maintained, yet the school district is accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir.2000) (citing *Rowley,* 458 U.S. at 188–89, 102 S.Ct. 3034). *Melissa S.,* 183 Fed.Appx. at 187.
>
> \*       \*       \*
>
> In order to establish liability for a violation of § 504 of the Rehabilitation Act, "a plaintiff must prove that (1) *389 [the individual] is 'disabled' as defined by the [Rehabilitation] Act; (2) [the individual] is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [the individual] was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir.1999) (citing *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir.1995), abrogated on other grounds by *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803–04 (3d Cir.2007)). In addition, to prove a violation under § 504 "the plaintiff must demonstrate that the school district knew or should have reasonably known of the plaintiff's disability." *Coleman*, 983 F.Supp.2d at 568.
>
> To obtain compensatory monetary damages under § 504 of the RA and the ADA, however, the Third Circuit requires a plaintiff to prove intentional discrimination. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir.2013). The Third Circuit has also held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA [and the ADA]." *S.H.,* 729 F.3d at 263; *D.E. v. Cent. Dauphin*

*Sch. Dist.,* 765 F.3d 260, 269 (3d Cir.2014). The Third Circuit Court in *D.E.,* 765 F.3d at 269, stated:

> To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated..., and (2) failure to act despite that knowledge." *Id.* at 265 (citing *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1139 (9th Cir.2001)). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *Id.* at 263 (quoting *Meagley v. City of Little Rock,* 639 F.3d 384, 389 (8th Cir.2011) (internal quotation marks omitted)). It does, however, require a " 'deliberate choice, rather than negligence or bureaucratic inaction.' " Id. (quoting *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 276 (2d Cir.2009)).

Simply put, Plaintiffs have failed to state a claim against the School District Defendants for which relief may be granted because they have not advanced allegations which are plausible on their face. While Plaintiffs complaint, as a *pro se* pleading, is entitled to a liberal construction, *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), all parties must, however, follow the Federal Rules of Civil Procedure. *Tauro v. Capital One Financial Corp.,* 2016 WL 7404585 (citations omitted). Under Fed. R. Civ. Pr. 8(a), Plaintiffs shall make a short and plain statement of their claim that the special education hearing officer' decision should be overturned by this Court. Plaintiffs have failed to attach the final order and decision rendered by the Hearing Officer, which apparently forms the basis for this action. Plaintiffs' complaint is far from short or plainly stated.[3] For these reasons, Plaintiffs' complaint as against the School District Defendants will be dismissed for failure to state a claim upon which relief may be granted.

---

[3] The Court will deny as moot the School District Defendants' motion for more definite statement under Fed. R. Civ. Pr. 12(e). The School District Defendants' motion to strike claims stated by Plaintiffs, on behalf of minor child M.H., is stricken from the pleadings, as case law within this Circuit provides that parents may not bring claims on behalf of their minor child, *pro se*. *Woodruff v. Hamilton Twp. Public School*, 2009 WL 105750, * 2 (3d Cir. 2009).

An appropriate Order follows.

**SO ORDERED** this 30th day of March, 2017.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge