IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERI R. HENRY *and*, VIRGIL G. HENRY
*for M.H.,*

                             16cv1239

       Plaintiffs,                      ELECTRONICALLY FILED

                  v.

DR. LINDA LANE *Superintendent of Pgh.*
*Public Schools*, ET AL.,

        Defendants.

**Memorandum Opinion on Motions to Dismiss (doc. 31 and 33)**

## I.       Introduction

This is a civil rights action brought by Plaintiffs, Teri and Virgil Henry, as parents of

M.H., against numerous Defendants in connection with what appears to be an appeal of a May

16, 2016 Decision and Final Order of Special Education Hearing Officer, Defendant Skidmore,

who is employed by the Pennsylvania Office for Dispute Resolution.  However, in the extensive

and confusing narrative of Plaintiffs' *pro se* complaint, they reference claims relating to M.H.'s

current Individualized Education Program (IEP), which presumably have not been subject to an

administrative proceeding.

On March 31, 2017, this Court previously Granted the Motion to Dismiss brought

pursuant to Fed. R. Civ. Pr. 12(b)(1), (4), (5) and (6); Denied as Moot a Motion for More

Definite Statement pursuant to Fed. R. Civ. P 12(e); and, Granted a Motion to Strike Minor from

Caption and Case filed by Defendants Pittsburgh Public School District, Denise (unknown last

name), Mary-Lou (unknown last name), Amy Berner, Tracy Brezicki, Paulette Colonna, Mary-

Jane Conley, Sylbia Kunst, Cicily Kurian, Dr. Linda Lane, David May-Stein, Tom Spickler,

Donna Westbrooks-Martin, Kimberly Zangrilli, and  Aimee Zundel, collectively referred to as the "School District Defendants."  Doc. 29 and Doc. 30.  The Court will not recount the lengthy prior Memorandum Opinion on the Motion to Dismiss, et al., but instead will incorporate by reference the Opinion and Order at doc. 29 and doc. 30.

Now pending before this Court is a Motion to Dismiss, filed by Defendant Skidmore, a Hearing Officer who presided over in the subject administrative hearing and issued a Decision thereon (doc. 31), and a Motion to Dismiss, for a More Definite Statement, and a Motion to Strike (doc. 33), filed by Defendant Egan, who was the "former director/principal" of the Western Pennsylvania School for Blind Children (WPSBC).

Though Plaintiffs' Response to the instant Motions was due on March 10, 2017, 21 days after a ruling thereon, on April 14, 2017, Plaintiffs belatedly filed what appears to be a "Response," mainly to the Court's prior Memorandum Opinion at doc. 29, although it is largely incomprehensible, and contains over 115 pages of verbiage and attachments.  Doc. 36.

Plaintiffs were, in fact, ordered to respond to the instant Motions by April 14, 2017, and in what they have titled as a "Re-Memorandum Opinion on Motion to Dismiss (doc. 16) Re-AJS" and later as "Re-Motion Response" at doc. 36, it does not appear to be responsive to doc. 31 and doc. 33.  The Court notes, however, that at page 17 of doc. 36, Plaintiffs state: "Responding to the per [sic] 33 motions Teri and Virgil Henry.  We have a legal response against these non merit motions."  What follows, however, is a confusing list of factual allegations with cases interjected that are seemingly unrelated to and not applicable to the issue at hand. Doc. 36 at pp. 17-23.[1]

---

[1] Additionally, at page 10 of doc. 36 and again in an attachment at doc. 36-8, there appears to be a Motion for Reconsideration of an Order of this Court (doc. 28) denying Plaintiffs' Motion to Disqualify Counsel Kramer. Because the Motion does not demonstrate an error of law, fact, or any new evidence, said Motion will be Denied.

## II.     Standards of Review

### A. Rule 12(b)(1)

A Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges this Court's "very power to hear the case." *See Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  As the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).  In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks.  *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

A facial attack challenges the sufficiency of the pleadings, and the Court must accept the Plaintiff's allegations as true.  *Id.*  A Defendant who attacks a complaint on its face "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of action." *Mullen v. Thompson*, 155 F. Supp. 2d 448, 451 (W.D. Pa. 2001).  Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

When, as in this case, a Defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims." *Petruska*, 462 F.3d at 302 (quoting *Mortenson*, 549 F.2d at 891).  In a

factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to

allow affidavits, documents, and even limited evidentiary hearings.  *See United States ex rel.

Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

### B.  Fed. R. Civ. Pr. 12(b)(6)

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon

which relief can be granted."  Detailed factual pleading is not required – Rule 8(a)(2) calls for a

"short and plain statement of the claim showing that the pleader is entitled to relief" – but a

Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible

claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard does not

require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a

defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Determining the plausibility of an

alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  Id. at 679

Building upon the landmark United States Supreme Court decisions in *Twombly* and

*Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court

must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a
> claim. Second, the court should identify allegations that, because they are no more
> than conclusions, are not entitled to the assumption of truth.  Finally, where there
> are well-pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the Court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556.

Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## III.     Factual Allegations

The Complaint, which is 40 pages single-spaced, written in a vague and confusing run-on narrative, alleges as follows with regard to Defendant Skidmore:

> 38. Violation of not conducting Due Process Hearing, according to Pennsylvania Standards of Conduct for ODR Special Education Hearing Officers; Proceedings were not conducted in an impartial manner. The decision and outcome were highly questionable. Facts, truth and clear substantial evidence presented, weren't reasonably Considered. We were also notified that issues regarding negligence wasn't within the Hearing Officers Jurisdiction. Findings of fact, documentation, weren't factored in with conclusions Of the law. There was no remedy made to encourage equal education, with providing Adequate and sufficient support, to ensure a (FAPE) opportunity to make meaningful progress And for our child to benefit educationally with Appropriate, Standard legal practice.

Doc. 4 at. ¶ 38 (grammatical errors in original).

Plaintiffs make numerous allegations concerning Defendant Skidmore. Doc. 4 at ¶ 53. Specifically, they appear to assert that Defendant Skidmore condoned what they believe was a conflict of interest between the School District's counsel and Attorney Rebecca Heaton-Hall, with whom Plaintiffs apparently met when they were seeking "possible advice and/or representation," about how to proceed in this matter. *Id.* Plaintiffs also raise a number of allegations regarding the due process proceedings, themselves, as follows:

> The Proceedings were highly questionable, as to the Hearing Officer displaying partiality toward the District & District's Attorney. Everything, from not considering, our admissible evidence of exhibits according, per. Hearing Officer's instruction, without a doubt or question, that several District witnesses perjured themselves, as if perjury before God & The Hearing Officer is not a serious violation . . . . We also had an extremely difficult time,

requesting the Hearing Officer to consider & honor, our request, to subpoena
directly relevant people, who caused or played a role in blocking [M.H.]'s
opportunity to a (FAPE) and Equal Education Opportunity . . . . When The
District Attorney would request witnesses, The Hearing Officer honored all her
requests for subpoenas, even though for the most part, we didn't have anything
to hide, with their requests, and also gave use the opportunity to cross examine,
however, sometimes the requests were cumulative, and some could only testify
to limited information . . . .

With regard to Plaintiffs' factual allegations against Defendant Egan, in a three-page,

single-spaced paragraph replete with run-on sentences and other disjointed and confusing

allegations, Plaintiffs set forth the factual basis of their claim(s) against Ms. Egan.

48. Brenda Egan - We 1st met approx. In 2008 for a Tour, Orientation and
enroll to this Program; referred by Early Intervention Coordinator, of services.
We completed the intake forms, and at approx. (2) and a half years old, we
were excited that she was enrolled in such a beautiful, what seemed warm
welcoming, during the Tour and meeting. M.H. around the time she was
approved to start, began having a lot of E.R. visits, for she was born with
complex medical issues, however, due to having surgical procedures, testing,
behavioral issues, it was critical for us as parents to be sure, we developed
more of an idea as to what was causing her to be consistently uncomfortable.
We communicated with Ms. Egan on several occasion's For she did call at
times, to check how M.H. was doing, while in the hospital, very often at that
time. As eager as we wanted M.H. to begin school, it most certainly, in this
case, wasn't appropriate to do so. We discussed at some point with Ms. Egan,
that, we wanted to postpone, her beginning, because, M.H. was having too
many unknown issues, which caused discomfort for lon periods of time. The
Doctors at that time didn't understand the full scope, because she was still so
young, going through so many changes, which weren't fully understood. We
felt to put her in school at that time, would've also been confusing to staff, for
figuring out how to address, & understand her issues was, best to just take
care of her medical needs, for we were mostly in the hospital, probably as
much as we were actually home. Ms. Egan seemed understanding & patient. It
was a very overwhelming time for our family & our main concern, was
making sure she would be o.k. Time than passed, we became more aware of
the issues of medical complexities, doctors performed surgeries, and then we
became more knowledgeable in understanding she was experiencing a
combination of behavioral, discomfort and it became known that she was not
yet speaking, which added to understanding how to help her, to also relate to
her caregivers at school. Working as a team to make every-one's job a little
bit easier, has always been my way of thinking & perception's. When M.H.
turned (5) years old, we realized she was mostly challenged with behavioral,
needs. Yes she'll always have medical needs & even experience discomfort,

7

however, a lot has changed. We've learned a lot over those years, and could then not be as worried. For we were more than happy to explain how she needs addressed, as far as feeding tube needs, Colostomy Care, Mickey-Button, for tube feedings, through the stomach, for mainly hydration purposes. [W]e kept our communication's with Egan open, however, when we felt, M.H. was ready to physically start, Ms. Egan's Program, while speaking to her & their Primary Nurse, they didn't seem sure about some of her care. We were told that if M.H.'s Mikey button became dislodged, they would send her to the E.R. We couldn't understand why that would be necessary, being that insertion of a Mickey Button once you are shown how to place in the ostomy/stoma, it's not really complex enough to be sent to the E.R. unless the ostomy closes before inserting the button, or a Foley/tube to keep the ostomy from closing. They didn't sound sure about the type of formula, which she receive by a feeding pump, so when we met with a School Official/ District Member at a local school, to perform evaluation's to actually physically start school in approx. Mid December of 2010, around her birthday, It was similar to an (IEP) meeting, however, I can't recall if the meeting was addressed at so. We were still interested in The Western PA. School for Blind Children, It is a beautiful school,& the environment & staff seemed very warm & welcoming, during Orientation, however, when w was ready to begin, Ms. Egan & staff, didn't sound sure, right before wanting to start. We were also told, by Ms. Debra Sestilli, that she would actually, need to enroll & experience a Pittsburgh Public School, and try to see how Pgh, Pioneer, for special needs would be. We do have an understanding that there's a lot of funding issues, and if a child is in a District zone, all of funding & financing needs to be approved by Pgh, public School's, which they would prefer her to stay in a Public School. We really didn't have any problems with that, so we went on to call the Pioneer Principal, Dr. Kunst at the time. We also was scheduled to Tour & do an Orientation lst at the School. Dr. Kunst seemed welcoming and seasoned with experience with working with Special needs Children, and we felt as if Pioneer would be a great fit, for they had lots of equipment in helping to assist M.H., and the therapist seemed knowledgeable regarding more severe disabilities. Even at that time the (CRNP) seemed as if M.H.'s care wouldn't be an issue. To fast forward, the team of, or I should say group of staff, weren't as welcoming as Dr. Kunst. They didn't want to touch or handle the Colostomy Pouch. One would've thought the care of her pouch wasn't well kept. M.H. and my care for hygiene, was more than well kept, considering the uniqueness, of her bathroom regime. I put my all my effort, into attempting to demonstrate Colostomy Pouch Care, as advised by Dr. Kunst, to supervise her staff. They wouldn't cooperate, and Teacher stated, they were not to touch the pouch. Things weren't working, because the Team, wasn't working together as a Team to help M.H. be a welcomed student. I had spoken to Dr. Kunst regarding wanting to meet with hr & the staff to get down to who's responsible for what & why I was told the opposite to help staff get acquainted with M.H.'s care. I was unable to meet up with Dr. Kunst, even though I attended

school with M.H., until things were organized, which never took place, and then came "The Day of Horror! The incident. A very Bizarre day! Things obviously wasn't working at Pioneer, for I was more afraid of her safety, in regards to the behavior staff, than her own behavior's, disability related. We tried to meet to find resolution's. Unfortunately, we agreed to reconsider Ms. Egan's Program, with a suggestion this time of a 1:1 Nurse that may be more familiar with M.H.'s needs. In 2011, we went back to do another intake, same process as in 2008. Ms. Egan never mentioned that in 2010 M.H. had been permanently terminated from their Program. We didn't find this out, until The Due Process Proceedings, Which Attorney Zundel, gave us a copy of the document written to Ms. Debre Sestilli. She gave the impression we could actually, physically begin M.H. this time. We went through the whole process of paperwork again, then when fall came around, began sounding unsure again, even with suggestion of a 1:1 nurse, where also they didn't want a 1:1 nurse to attend. We don't understand, why having some-one who can be more familiar or more willing to assist M.H. throughout her school day, if things would work out easier. Ms. Egan also informed me that Ms. Colonna had retired, Mr Spickler took her place, and they were meeting in regards to M.H., however, she didn't share any details. After this we briefly spoke to Mr. Spickler, he didn't really sound reassuring to what was going on, and after a couple brief conversation's with my husband & myself, we were frustrated because we couldn't get appropriate help, than after that we haven't heard anything else from Ms. Egan or Mr. Spickler. We then contacted, his supervisor, Ms. Conley & spoke to other School Officials to try to figure out why we were having so many issues getting adequate help for M.H. to attend school. Ms. Egan during Due Process wasn't honest about certain things, we were rather surprised by that. For the most part we had seemed to have built rapport, so I thought. Ms. Egan collaborated with The District.

Doc. 4 at ¶ 48. (grammatical errors in original).

## IV. Discussion

### A. Rule 12(b)(1)

Defendant Egan contends in her Motion to Dismiss that because the instant lawsuit raises claims against Defendant Egan which arose after the May 16, 2016 Order, this Court lacks subject matter jurisdiction to hear these claims, because Plaintiffs did not pursue their administrative remedies.

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., requires states educational agencies to "establish and maintain procedures . . . to ensure that

9

children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education [FAPE] by such agencies." 20 U.S.C. § 1415(a). Parents and eligible children have the right to request an impartial due process hearing on any matter relating to the indemnification, evaluation or educational placement of the child, or the provision of FAPE to such a child. Id. at § 1415(b)(6) and (f)(1). Either the parent or the aggrieved child may appeal the decision of an administrative hearing officer to the appropriate court of competent jurisdiction. Id. at § 1415(i)(2).

Exhaustion of administrative remedies is a strong policy consideration in the IDEA. *Komninos v. Upper Saddle River Bd. of Educ*., 13 F.3d 775, 778 (3d Cir. 1994). The exhaustion of administrative remedies also extends to violations claimed under Section 504 and the Americans with Disabilities Act insofar as they relate to the provision of FAPE to the child. *See Batchelor v. Rose Tree Media Sct. Dist*, 759 F.3d 266, 272-73 ((3d Cir. 2014).

The United States Court of Appeals for the Third Circuit has recognized exceptions to the IDEA's exhaustion requirement including where: "(1) it 'would be futile or inadequate'; (2) the 'issue presented is purely a legal question'; (3) 'the administrative agency cannot grant relief (e.g., hearing officer lacks authority to provide a remedy)'; or (4) 'exhaustion would work severe or irreparable harm upon a litigant.'" *A.C. v. Scranton School District*, 191 F.Supp. 3d 375, 394 (M.D. Pa. June 13, 2016) (citing *Komninos v. Upper Saddle River Bd. of Educ*., 13 F.3d 775, 778 (3d Cir. 1994)). The IDEA exhaustion requirement is jurisdictional. *Id.* (citation omitted); *Blunt v. Lower Merion School Dist*., 559 F.Supp.2d 548 (E.D. Pa. 2008) (dismissing unexhausted claims for lack of jurisdiction under Rule 12(b)(1)).

Because there is no allegation that Plaintiffs have exhausted their administrative remedies as to their claims arising after May 16, 2016 Decision, and because Plaintiffs appear to be

complaining about the denial of FAPE, exhaustion of administrative remedies is required.

Therefore, Plaintiffs have failed to meet their burden of persuasion that these claims are properly

before this Court, subject matter jurisdiction as to these claims is lacking. *Kehr Packages, Inc.,*

*v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991). *See Fry v. Napolean Community Schools*,

137 S. Ct. 743 (Where the gravamen of a suit is the denial of a FAPE, such that a plaintiff is

required to exhaust the IDEA's remedies, a court may consider that a plaintiff has previously

invoked the IDEA's formal procedures to handle the dispute).

### B. Rule 12(b)(6)

Defendants, Skidmore and Egan, each assert in their respective Motions to Dismiss that

Plaintiffs' complaint fails to state a claim upon which relief may be granted. Although the

underlying arguments supporting these Motions are varied, this Court, nonetheless, agrees, and

will address each, in turn.

First, as to Defendant Skidmore, who was the Special Education Hearing Officer who

was responsible for and issued the Decision in the underlying dispute (as was attached by

Defendant Skidmore at doc. 32-1),[2] it is well established that "[q]uasi-judicial absolute immunity

attaches to public officials whose roles are 'functionally comparable to that of a Judge.'"

*Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011). Judicial

officers like (and including) Ms. Skidmore, who perform adjudicatory functions have absolute

immunity from damages liability for their judicial acts. *Luo v. Owen J. Roberts Sch. Dist*., 2016

WL 6831122 at *7 (E.D. Pa. October 27, 2016) (finding that Ms. Skidmore had absolute

immunity while acting within the scope of her jurisdiction and dismissing claims against her).

---

[2] This Court may consider said attachment as a matter of public record. *Kohn v. School District of Harrisburgh*, 817 F. Supp. 2d 487 (M.D. Pa. 2011).

Based upon the facts as alleged, Defendant Skidmore's actions as a Hearing Officer and the Decision she rendered in her capacity as Special Education Hearing Officer in this case were within the course and scope of her duties. Other than Plaintiffs' conclusory allegations that the proceedings were not impartial and that the decision and outcome were "highly questionable," Plaintiffs have failed to allege that Ms. Skidmore violated any applicable provision of the requirements for Hearing Officers. *See* 34 C.F.R. 300.511(d). On this basis, Defendant Skidmore is entitled to absolute immunity for her decision as a Hearing Officer who presided over the underlying administrative proceedings.

Second, as to Defendant Egan, in her capacity as "former director/principal," of WPSBC, notably, Plaintiffs only advance claims against Defendant Egan, instead of WPSBC. Plaintiffs appear to assert claims against Defendant Egan in her official capacity. Importantly, individual liability is not available under the Rehabilitation Act, Title II of the ADA or the IDEA. *Taylor v. Altoona Area School Dist.*, 513 F.Supp.2d 540, 553 (W.D. Pa. 2007). Therefore, because none of those statutes permit recovery against individual defendants, these claims must be dismissed. And, to the extent that Plaintiffs seek to recover under the No Child Left Behind Act, and the Family Educational Rights and Privacy Act, neither of these statutes confers to individuals private causes of action.

Simply put, Plaintiffs have failed to state claims against the remaining Defendants, Skidmore and Egan, for which relief may be granted because they have not advanced allegations which are plausible on their face. As stated in the prior Memorandum Opinion of this Court, and bears repeating, "[w]hile Plaintiffs' complaint, as a *pro se* pleading, is entitled to a liberal construction, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), all parties must, however, follow the Federal Rules of Civil Procedure.

*Tauro v. Capital One Financial Corp.,* 2016 WL 7404585 (citations omitted)." Doc.
16.

Pursuant to Fed. R. Civ. P. 8(a), Plaintiffs are required to make a short and plain

statement of their claims that the Special Education Hearing Officer's Decision should

be overturned by this Court.  Plaintiffs have failed to attach the Final Order and

Decision rendered by the Hearing Officer, which apparently forms the basis for this

action, but Defendant Skidmore has attached this document, which this Court has

appropriately noted.  Doc. 32-1.  The Court will deny as moot Defendant Egan's

Motion for More Definite Statement under Fed. R. Civ. Pr. 12(e).[3]  For these reasons,

Plaintiffs' complaint as against the remaining Defendants Skidmore and Egan will be

dismissed for failure to state a claim upon which relief may be granted.

An appropriate Order follows.


**SO ORDERED** this 18th day of April, 2017.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

---

[3]Plaintiffs' complaint is far from short or plainly stated.  Additionally, Defendant Egan's Motion
to Strike claims stated by Plaintiffs, on behalf of minor child M.H., is stricken from the
pleadings, as case law within this Circuit provides that parents may not bring claims on behalf of
their minor child, *pro se*.  *Woodruff v. Hamilton Twp. Public School*, 2009 WL 105750, * 2 (3d
Cir. 2009).